Filed 7/7/21  In re D.S. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re D. S., a Person Coming Under the Juvenile Court Law. | C093165 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>M. L.,<br><br>        Defendant and Appellant. | (Super. Ct. No. STKJVDP20160000208) |

This is the second appeal filed by mother (M. L.) after termination of her parental rights.  (Welf. & Inst. Code,[1] § 366.26.)  In the previous appeal, this court conditionally reversed and remanded for limited proceedings to ensure compliance with the Indian

---

[1]    All further undesignated statutory references are to the Welfare and Institutions Code.

1

Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). In this appeal from the juvenile court's orders reinstating the orders terminating her parental rights and freeing the minors for adoption, she again contends the juvenile court and the San Joaquin County Human Services Agency (Agency) failed to comply with the requirements of the ICWA. Mother having refused to cooperate in securing ICWA compliance and having further failed to object to ICWA compliance at the limited ICWA proceeding on remand, we find her claim forfeited and affirm the orders terminating her parental rights.

BACKGROUND

Because the sole issue on appeal is ICWA compliance upon remand, we provide an abbreviated factual and procedural background.

On May 4, 2016, the Agency filed a section 300 petition on behalf of D. (then age seven) and W. (then age three). The petition was also filed on behalf of the minors' two siblings, who are not subjects of this appeal. The petition alleged the minors and their siblings came within section 300, subdivisions (b) (failure to protect), (e) (severe physical abuse), (g) (no provision for support), (i) (cruelty), and (j) (abuse of sibling). The minors were detained. Mother stated she did not know if she had Native American ancestry but said she would check with her family. She completed an ICWA-020 form claiming possible Native American ancestry but not listing a tribe. Thereafter, during a June 3, 2016 interview, mother stated her paternal grandmother was "full blood" Native American and her maternal grandmother has Native American heritage from Mississippi, but mother did not know with what tribes either were affiliated.

The juvenile court took jurisdiction, adjudged the minors dependents, ordered them removed from parental custody, and provided parents reunification services. The ICWA-030 notice, filed with the court on September 21, 2016, contained information for mother, minors' fathers, the minors' maternal grandmother and grandfather, and the minors' maternal great-grandmother and great-grandfather. This information included the fact that the maternal grandmother resided in Sacramento, but did not provide an

2

address.  It also did not provide the deceased maternal grandfather's birth date or date of and place of death, the name and city of residence for the maternal great-grandmothers, the names and place of death of the deceased maternal great-grandfathers, and it provided only the state of Mississippi as the birthplace for one of the maternal great-grandmothers.

As no tribe affiliation had been provided, the ICWA-030 notice was sent only to the Bureau of Indian Affairs (BIA).  The response from the BIA indicated that it did not determine tribal eligibility, nor did it maintain a comprehensive list of persons possessing Indian blood.  The response stated that it was the responsibility of the person claiming Indian ancestry to establish a tribal affiliation.  As a result of the unspecified tribal affiliation, the BIA determined that the notice contained insufficient or limited information to determine tribal affiliation or support that the minor was an Indian child within the meaning of the ICWA.  Subsequently, the Agency's February 16, 2017, status review report stated that the ICWA did not apply.  The parties submitted the ICWA matter on the record and the juvenile court made the finding the ICWA did not apply on February 22, 2017.

On March 27, 2017, the juvenile court terminated parents' reunification services due to their minimal progress and participation.  The minors had several placements but have been in their prospective adoptive home since August 2018 and have formed a close bond.  The juvenile court ordered parental rights terminated, freeing the minors for adoption, on August 26, 2019.

Mother appealed.  (*In re D.S. et al.* (July 13, 2020, C090287) [nonpub. opn.].)  She argued the minors were not adoptable and the juvenile court and Agency had failed to comply with the ICWA inquiry and notice requirements because the Agency did not establish it had attempted to obtain the ancestry and tribal information missing from the ICWA notice from her relatives.  As the record reflected, mother had living relatives, and there was no indication in the record that the Agency had made effort to inquire of these relatives to obtain the necessary ICWA notice information, we agreed that reversal was

3

required. We held the evidence supported the finding the minors are adoptable but conditionally reversed and remanded for the limited purpose of ensuring ICWA compliance. Remittitur issued on September 14, 2020.

On remand, the Agency was ordered to make further ICWA inquiry. The social worker tried to obtain information from mother on August 14, August 25, September 15, September 24, October 1, October 7, October 13, and October 27, 2020. Mother said she would be present at an October 28, 2020, ICWA compliance hearing to provide ICWA information, but she failed to appear. The matter was continued to November 4, 2020, again, for the specific reason of mother to provide ICWA information. When the matter was called, mother's counsel reported that she had just spoken with mother, who was present in the courthouse, and did not know where she went. Her counsel reported that she had asked mother about any Native American heritage and mother was going to communicate with the social worker but that had not yet occurred. The court trailed the matter to allow mother to appear. When the matter was recalled, mother's counsel reported that, although the social worker had seen mother in the interim, mother was once again, not present. The matter was trailed again to allow for mother to appear. When the matter was called for the third time, mother's counsel reported she could not find mother or reach mother on her cell phone.

The Agency argued that mother has the information regarding her maternal great-grandparents and ancestry, if there is any, and was just not participating or assisting the Agency in finding this information. It requested the juvenile court move forward, find the ICWA does not apply, and reinstate the orders terminating parental rights. The juvenile court then asked mother's counsel for "any comment." Counsel responded that she was not sure why mother had left. Counsel had explained to mother the appeal came back solely on the issue of ICWA. Mother had really been hoping that the court would allow her to have visitation with the minors while the case was reopened. Counsel then objected to terminating mother's parental rights again and requested the court "give her

4

another chance." Counsel did not argue that the Agency had not made adequate ICWA inquiry efforts, nor did counsel object to findings that the Agency had made adequate inquiry under the ICWA or that the ICWA does not apply. Counsel did not argue that the contact information for any of mother's relatives was known to the Agency and that the Agency could, therefore, obtain ICWA information without the assistance of mother. Instead, counsel simply noted that "unfortunately, I can't force her to give up that information to the [A]gency, but I will say she wants to see her children and does not want her parental rights to be terminated."

The juvenile court found the Agency had looked into the alleged Native American ancestry more thoroughly and had made continual attempts to obtain more information but that the holder of the information, if there is any such information, does not appear to want to provide it. The juvenile court then found that the ICWA does not apply and reinstated its previous orders terminating parental rights and freeing the minors for adoption. Mother filed a timely notice of appeal from these orders on December 1, 2020.

DISCUSSION

Mother contends we must reverse the termination of her parental rights and remand for a second time because the Agency's efforts of further ICWA inquiry on remand were once again inadequate. She argues that, despite her lack of cooperation, the Agency did not sufficiently establish it attempted to locate and contact mother's relatives to obtain the information missing from the original ICWA notices. And for a second time, she raises her contention of ICWA inquiry error without first raising it in the juvenile court. Gamesmanship, such as mother's in this case, is particularly reprehensible in the juvenile dependency arena. (*In re Amber F.* (2007) 150 Cal.App.4th 1152, 1156.)

Generally, the forfeiture doctrine does not bar consideration of ICWA inquiry and notice issues not raised in the juvenile court. " 'The notice requirements serve the interests of the Indian tribes "irrespective of the position of the parents" and cannot be

5

[forfeit]ed by the parent.' [Citation.] A parent in a dependency proceeding is permitted to raise ICWA notice issues not only in the juvenile court, but also on appeal even where, as here, no mention was made of the issue in the juvenile court." (*In re Justin S.* (2007) 150 Cal.App.4th 1426, 1435.)

But where, as here, a case is remanded to the juvenile court for the purpose of curing ICWA inquiry and notice defects and the parent is represented by counsel at the postremand compliance hearing and counsel raises no objection to the further attempts at the ICWA compliance, an exception to the general rule applies. "We do not believe Congress anticipated or intended to require successive or serial appeals challenging ICWA notices for the first time on appeal. . . . '[A]t some point, the rules of error preservation must apply or parents will be able to repeatedly delay permanence for children through numerous belated ICWA notice appeals and writs.' " (*In re X.V.* (2005) 132 Cal.App.4th 794, 804-805.) These principles apply here.

Although mother absented herself from the ICWA compliance hearing, she was represented by counsel and her counsel failed to raise any objections to the Agency's attempts at further ICWA inquiry or notice at the hearing. In fact, counsel indicated that, despite being informed that the sole issue on remand was ICWA compliance, mother's attention was limited to seeking to have visitation reinstated during the period on remand and to object to termination of her parental rights. Thus, mother has forfeited any continued contentions surrounding the Agency's attempts at ICWA inquiry in this, her second appeal.

Furthermore, "[a]s a matter of respect for the children involved and the judicial system, as well as common sense, *it is incumbent on parents on remand to assist the Agency in ensuring proper notice is given.*" (*In re X.V.*, *supra*, 132 Cal.App.4th at p. 804, italics added.) Here, no less than *10* attempts were made to gain mother's assistance in obtaining further ICWA information, if any there was. Yet, instead of assisting the Agency in ensuring proper inquiry and notice under the ICWA, mother

6

affirmatively refused to assist the Agency and played what appears to be a game of cat and mouse, with the purpose of prolonging these proceedings, attempting to obtain new visitation orders, and delaying permanence for these minors who have been in the dependency system for over five years.

## DISPOSITION

The orders of the juvenile court terminating parental rights are affirmed.


/s/_____
Robie, J.


We concur:


/s/_____
Blease, Acting P. J.


/s/_____
Renner, J.